A90A1281. MORRIS v. SHAH.
(397 SE2d 207)

Deen, Presiding Judge.

Appellant F. Leonard Morris brought suit for damages against appellee Dr. Indra Shah, contending that he was the owner of certain lands in Forest Lakes Estates subdivision and joint owner with other residents. Morris alleged that his and the other owners' land and water rights had been adversely affected by Shah when he altered a portion of property which lay behind the spillway of a dam in the subdivision's lake; and that as a result of this alteration the dam broke and damaged the road which crossed the dam, causing a lake above the dam to drain and a lake below the dam to become filled with silt and debris. Prior to trial, Shah made a motion to dismiss for failure to join necessary and indispensable parties (the other land-owners in the subdivision). The court conducted a hearing and denied the motion. A pre-trial order was entered, setting forth that the trial issues were: (1) whether the defendant was negligent in filling dirt into the overflow line of the spillway of the dam; (2) whether the defendant's actions were wilful, intentional, or done with such negligence as to indicate a wanton disregard of the rights of others; (3) whether the plaintiff breached his contractual obligations to the defendant; (4) whether the plaintiff inadequately constructed the dam and the spillway.

Morris presented evidence showing that Shah purchased three lake-front lots from him, on which Shah planned to construct a residence. The third lot was considerably cheaper than the other two because the spillway for the dam ran across it. The spillway was located below the dam and was designed to permit the water in the lake to overflow downstream in a designated manner whenever a heavy rain caused the lake level to rise too high. Morris contended that Shah altered the design of the spillway by creating a berm in such a way that it destroyed its design; and that a subsequent heavy rain filled the lake above the dam, causing water to try to run through the spillway in a swirling motion, which resulted in increased pressure on the dam and broke it. There was also evidence that prior to this incident

Shah had been warned not to interfere with the design of the spillway when it came to Morris' attention that Shah was filling in the land on the third lot. Morris brought the engineer who designed the dam to visit Shah and discuss the problem, but Shah refused to curtail his activities. When the dam broke, the road and paving on top of it were destroyed, the lake above the dam drained, the lake below the dam was partially filled with silt, and unsightly weeds, grasses, and bushes grew up in the area formerly occupied by the lake. Morris sought damages to repair the dam and the upper lakebed and to remove silt from the lower lake, and presented evidence of estimates to repair all the damage. He also sought punitive damages and attorney fees.

After Morris rested, Shah made a motion for a directed verdict on the grounds that Morris had not offered any proof of ownership. The trial court reviewed the testimony and granted the motion. Morris made a motion to open the case to present evidence of his ownership of the affected property, which was denied, and he appeals.

At the onset of his testimony, Morris stated that he bought and developed Forest Lakes Estates subdivision, on which he built seven lakes. This was not disputed by Shah either before or during the trial, and no cross-examination was undertaken in this regard. The questions to be tried were set forth in the pretrial order, and Shah never raised a defense that Morris was not the owner of the damaged property. " 'A pretrial order limits the issues for trial to those not disposed of by admissions or agreements of counsel. The order, when entered, controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. OCGA § 9-11-16 (b). If a claim or issue is omitted from the order, it is waived.' (Cits. and punctuation omitted.) *Long v. Marion*, 257 Ga. 431, 433 (360 SE2d 255) (1987)." *King v. Thompkins*, 186 Ga. App. 12, 13 (1) (366 SE2d 340) (1988). Accord *John H. Smith, Inc. v. Teveit*, 175 Ga. App. 565, 566 (1) (a) (333 SE2d 856) (1985).

Moreover, "the directed verdict is not a vehicle to obtain a judgment on the technical grounds that a plaintiff has merely neglected to show some evidence material to his case. Particularly, since the trial court may in its discretion permit the plaintiff to reopen his case and offer some neglected evidence [cit.], in such a case a directed verdict is generally improvident. [Cit.]" *Able-craft, Inc. v. Bradshaw*, 167 Ga. App. 725, 726-727 (1) (307 SE2d 671) (1983). "The requirements that must be met in a directed verdict situation are very strict and where, as here, there is . . . evidence of waiver, it cannot be said under the facts of this case and as required by OCGA § 9-11-50 (a) that 'the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' Therefore, it was error to direct a verdict for appellee. A fortiori, since [appellant] requested an opportunity to reopen for additional evidence on the issue of [ownership],

which had not been raised in the pre-trial order or in any other pre-trial proceedings, the trial court should have allowed the reopening. We realize that reopening evidence is a matter that addresses itself to the sound discretion of the trial court. [Cit.] However, under the facts of this case, . . . it would work a manifest injustice not to allow [appellant] to fully address the issue and would constitute an abuse of discretion." *Worth v. Ga. Farm &c. Ins. Co.*, 174 Ga. App. 194, 196-197 (2) (330 SE2d 1) (1985). Accordingly, the directed verdict in Shah's favor must be reversed.

*Judgment reversed. Pope and Beasley, JJ., concur.*

DECIDED SEPTEMBER 17, 1990

*Morris & Webster, F. Leonard Morris, Jr.*, for appellant.
*Allen & Kelley, Roy Benton Allen, Jr., Sims, Fleming & Swan, John S. Sims, Jr.*, for appellee.